# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2546-24

IN THE MATTER OF
REGISTRANT P.H.O.[1]

_____

Submitted April 20, 2026 – Decided July 16, 2026

Before Judges Sabatino and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. ML-1004.

Benedict Altman and Nettl, LLC, attorneys for appellant P.H.O. (Philip Nettl, on the brief).

Linda Estremera, Middlesex County Prosecutor, attorney for respondent State of New Jersey (David M. Liston, Assistant Prosecutor, of counsel; Brian D. Gillet, Legal Assistant, of counsel and on the brief).

PER CURIAM

Registrant P.H.O. appeals from an April 8, 2025 order re-classifying him from a Tier II (moderate risk) to a Tier III (high risk) sex offender pursuant to

---

[1] We use initials because records relating to the child victims of sexual assault or abuse are excluded from public access under Rule 1:38-3(c)(9).

the registration and community notification provisions of Megan's Law, N.J.S.A. 2C:7-1 to -23. Specifically, he contests the court's findings related to two factors under the Registrant Risk Assessment Scale (RRAS) -- factor one, degree of force and factor two, degree of contact. He maintains the State failed to clearly and convincingly establish the upward adjustment of his tier.

Registrant has an extensive history of sexual offenses dating back to the 1980s, including multiple convictions for endangering the welfare of a child, lewdness, and criminal sexual contact, as well as repeated violations of Community Supervision for Life (CSL) and Parole Supervision for Life (PSL). Before the events and charges that give rise to this appeal, registrant had an RRAS score of 66, was classified as a Tier II offender, and accordingly subject to internet registration and 90-day reporting requirements.

In December 2021, registrant met the then fifteen-year-old female victim, H.N., at a Dunkin Donuts. She told the police she accepted a ride from him, after which he brought her to his home and sexually assaulted her. She alleged that registrant touched her vagina and breasts under her clothing, penetrated her vagina with his penis, and forced her to perform oral sex on him. She was able to call 911 from the registrant's bathroom after which the police responded to the scene and arrested registrant.

A-2546-24

Registrant was later indicted and charged with second-degree kidnapping, N.J.S.A. 2C:13-1(b)(1), sexual assault, N.J.S.A. 2C:14-2, criminal sexual contact, N.J.S.A. 2C:14-3(b), and endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(1). He pled guilty to the endangering charge and to a violation of CSL. In exchange, the State sought a three-year custodial sentence, concurrent to an 18-month term for the CSL violation and agreed to dismiss the remaining charges. Defendant pled guilty to the endangering charge and provided a factual basis in which he admitted to touching the victim's breast. He was sentenced in accordance to the plea agreement and has since completed his custodial sentence and was released.

Based on the facts of the 2021 offense, registrant's guilty plea and his criminal history, the State provided registrant with notice of a hearing to increase his tier classification to Tier III. The State supported its application with a RRAS score of 93, which it later reduced to 86.

Prior to the tier classification hearing, both the State and the registrant submitted extensive documentary evidence and written arguments for the court's consideration. The State's submissions included the proposed RRAS which supported a Tier III classification and notification, with internet notification and 90-day registration. The RRAS was accompanied by supporting documentation,

3

including police reports, victim statements, forensic nurse reports, and Presentence Investigation Reports (PSIs) from Ocean, Monmouth, Essex, and Middlesex counties. These PSIs detailed the registrant's prior offenses, the circumstances of the 2021 offense, and his criminal history. The State also submitted the statements of the victim, H.N., to law enforcement and to the forensic nurse, which consistently described registrant's use of force and penetration.

As noted, defendant objected to the proposed tiering and focused his challenges on RRAS static factors, one, degree of force, and two, degree of contact. In support, he submitted DNA laboratory reports and argued that DNA testing of the victim's underwear found semen and male DNA, but excluded the registrant as the source, undermining her claim of sexual intercourse. Registrant also submitted a prior 2021 RRAS that he maintained established lower scores for force and contact. Further, the registrant provided evidence from H.N.'s ride share records and phone data, which contradicted her account of her movements before arriving at registrant's home which he maintained impeached her credibility.

Finally, registrant submitted an expert report of Dr. Zachary Yeoman, Ph.D., a licensed psychologist. Dr. Yeoman reviewed registrant's criminal

A-2546-24

history, treatment records, and the circumstances of the most recent offense. Although Dr. Yeoman expressed partial disagreement with the State's scoring of certain dynamic factors, he concluded that his overall risk level remained within the Tier III range having "scored him on the RRAS and gave him 76 points (tier 3 range)."

With respect to the degree of force factor, registrant stressed the State's only evidence was the victim's uncorroborated statements. He further maintained that he pled guilty to only the endangering charge which does not require proof of force as an element of the offense. Registrant also contended the victim's credibility was in serious question based on what he characterizes as numerous inconsistencies and false statements made to the police regarding her location and travel prior to the incident at his home. On this point, registrant pointed to the submitted ride share records and other evidence that contradicted her account that she took a train to New York and was picked up by police and also failed to provide material information regarding another individual she met before she interacted with the registrant. He argued that he did not exercise a degree of force because H.N.'s physical examination lacked any physical or forensic evidence which indicated that she sustained injuries.

A-2546-24

Registrant made similar claims regarding the degree of contact factor, specifically maintaining the State failed to introduce evidence that his acts involved penetration. Again, he maintains the only proof of either vaginal or oral penetration was the victim's uncorroborated statements which he contended were unreliable. He stressed that the submitted DNA results of her undergarments found semen and male DNA but excluded him as a source which supports his claim he did not engage in intercourse with her. Finally, he argues his plea only admitted to touching the victim's breast which does not involve a penetrative act.

As a result of these deficient proofs, registrant argued the RRAS should be modified to reflect contact scored as five points rather than characterized as penetration which was ascribed fifteen points, and that the force scoring should be zero. Finally, registrant maintained he was self-employed and should not be scored as unemployed, but conceded that a modification of his employment status would not alter his tier assuming the other factors remained unchanged.

In response, the State maintained that the revised RRAS score correctly reflected registrant's Tier III risk based on the record, including the 2021 offense and his significant criminal history. In support, it noted that the victim's statements to the police and her statement to the forensic nurse consistently

A-2546-24

reported defendant's use of force and penetration during the assault. Specifically, it relied on her account that registrant forced her onto a mattress, penetrated her vaginally, and forced her to perform oral sex. She also told the nurse he was "threatening me while he was on top of me and I was scared and crying." That conduct constituted, according to the State, a "moderate" degree of force at a minimum under the RRAS manual, and the evidence of both vaginal and oral penetration more than justified a "high risk" score for degree of contact.

The State also stressed under In re Registrant C.J., 474 N.J. Super. 97 (App. Div. 2022), the court was free to consider the facts underlying the charges as contained in the record and produced in discovery notwithstanding that registrant pled guilty only to an endangering charge conditioned upon those facts having been established by clear and convincing evidence to satisfy the less demanding standard of proof in Megan's law tiering. It maintained the material evidence in the record, specifically that the victim's statements were not materially contradicted and the fact that there was no DNA evidence did not prevent the court from making a finding that registrant used force or penetrated the victim as such evidence does not exist in every case, as registrant's counsel conceded. In addition, the State pointed out that registrant's own expert, Dr. Yeoman, scored him as a 76, which was within the Tier III range.

A-2546-24

The court held a non-testimonial hearing and after considering the parties' submissions and oral arguments, entered the April 8th, 2025 order that granted the State's application to reclassify registrant as a Tier III offender with a high level of risk of re-offense, "based upon the final Registrant Risk Assessment Scale (RRAS) score of 86." The court specifically noted its findings were based on clear and convincing evidence, and upon a full review of each factor of the RRAS, all documents provided to the court and the registrant "including but not limited to the RRAS, court documents, offense reports, and psychiatric or psychological evaluations . . . ." The court also affirmed the scope and manner of notification after again finding by clear and convincing evidence that the Tier III scope and manner of notification "shall occur within an approximate radius of .5 mile of [r]egistrant's residence and .5 mile of the registrant's place of employment and shall be made to those schools, day care centers and other community organizations set forth on the attached list."

During the hearing, the court considered and rejected all of registrant's arguments. It first acknowledged that the "big issue here is the force issue," and specifically whether the State clearly and convincingly established that his conduct warranted a moderate score for force and a high score for contact. The court rejected registrant's credibility-based challenges and found based on the

record, including the "PSIs and nature of the complaint" that the victim "was very clear about what she was alleging," and noted she stated registrant vaginally penetrated her and forced her to perform. It also recognized the lack of forensic evidence but found the State was permitted to credit her statements when assessing registrant's risk.

The court specifically addressed and rejected registrant's arguments regarding the lack of corroborating forensic evidence and purported inconsistencies in H.N.'s account. It noted that the absence of physical evidence was not dispositive on its force or contact findings, as corroboration beyond a credible victim statement was not required. On this point, the court relied on <u>In re Registrant C.J.</u> for the proposition that the State is permitted to rely on the underlying facts of the offense, even if they do not result in a conviction, provided those facts are established by clear and convincing evidence.

As to the force factor, the court rejected registrant's arguments and explained in light of the victim's allegations, the State appropriately considered the pre-indictment discovery "to make the assessments . . . with regards to scoring" and found no error in characterizing registrant as a moderate offender, noting "he could have been scored a much higher risk."

A-2546-24

The court similarly rejected registrant's challenges regarding the degree of contact factor. It explained that the record fully supported the RRAS scoring and found irrelevant that defendant pled to lesser charges as the considerations surrounding an individual's decision to plead guilty are distinctly different than the facts supporting the RRAS score, which consider the credible facts as found by the court.

The court found no error in the RRAS scoring as the facts fully supported a moderate risk for force and high risk for degree of contact, again relying on the victim's statements that registrant assaulted her and forced her to engage in penetrative acts. The court also took into consideration registrant's history of sexual offenses and his violations of his CSL and PSL obligations. The court specifically noted that during his plea allocution he admitted to touching the victim's breast which based on her age and circumstances was indisputably a non-consensual act. As the court explained "even touching her breast required some level of force because this most certainly was not a touching that was consented to." Finally, the court left open the possibility of a further modification if additional evidence was presented regarding defendant's employment status but noted based on the current record it did not appear that it would affect registrant's Tier III classification. Both the trial and our court

A-2546-24

denied his request for stay of the Tier III notification requirement pending appeal.

Before us, registrant largely reprises his arguments made before the court and claims it committed legal error by deferring unreasonably to the RRAS score and failing to make detailed and independent findings of fact regarding the State's proofs and whether it established critical facts by clear and convincing evidence. Further to this point, registrant argues the court failed to address the significant credibility issues regarding the victim's statements to the police without making independent factual findings supported by clear and convincing evidence. He contends the evidence supported a modification of the RRAS to reflect zero points for force and five points for contact, which would have resulted in a Tier II classification. We disagree with all of these arguments.

"We review a trial court's conclusions regarding a Megan's Law registrant's tier designation and scope of community notification for an abuse of discretion." In re Registrant B.B., 472 N.J. Super. 612, 619 (App. Div. 2022) (citing In re Registrant A.I., 303 N.J. Super. 105, 114 (App. Div. 1997)). "[A]n abuse of discretion arises when a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Id. at 619-20 (alteration in original) (quoting State v.

11

R.Y., 242 N.J. 48, 65 (2020)).  "The trial court's findings will be upheld so long as they are supported by sufficient evidence in the record . . . ."  In re Registrant M.L., 479 N.J. Super. 433, 449 (App. Div. 2024).  However, "[a] trial court's interpretation of the law and the . . . consequences that flow from established facts are not entitled to any special deference."  Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

The "hearing process . . . is not governed by the [R]ules of [E]vidence."  In re Registrant C.A., 146 N.J. 71, 83 (1996).  When calculating a registrant's score on the RRAS, "the State is free to rely on hearsay statements to support its assertions and does not need to base its calculations surrounding the underlying offense solely on the facts of conviction."  In re Registrant G.B., 147 N.J. 62, 79 (1996) (citing C.A., 146 N.J. at 88-93).  The court may consider "all reliable information" including "[s]exual offenses, not the subject of a conviction" and supported by admissions, police reports, and psychiatric reports.  In re Registrant J.W., 410 N.J. Super. 125, 130-31 (App. Div. 2009).

Megan's Law is intended "to protect the community from the dangers of recidivism by sexual offenders."  C.A., 146 N.J. at 80 (citing N.J.S.A. 2C:7-1(a)).  In fact, "[t]he expressed purposes of the registration and notification procedures [under Megan's Law] are 'public safety' and 'preventing and

12

promptly resolving incidents involving sexual abuse and missing persons.'" In re Registrant A.A., 461 N.J. Super. 385, 394 (App. Div. 2019) (quoting N.J.S.A. 2C:7-1). "The law is remedial and not intended to be punitive." Ibid. (citing Doe v. Poritz, 142 N.J. 1, 12-13 (1995)).

The extent of community notification chiefly results from a registrant's designation as a Tier I (low), Tier II (moderate), or Tier III (high) offender. N.J.S.A. 2C:7-8(a), (c)(1) to (3). Tier designations reflect a registrant's risk of re-offense. A.A., 461 N.J. Super. at 402. If the risk of re-offense is deemed low, only law enforcement agencies likely to encounter the registrant are notified. N.J.S.A. 2C:7-8(c)(1). If the risk of re-offense is considered moderate, schools and community organizations in the community also must be notified. N.J.S.A. 2C:7-8(c)(2). But if the risk of re-offense is high, members of the public likely to encounter the registrant likewise must be notified. N.J.S.A. 2C:7-8(c)(3).

Given the need for uniformity, N.J.S.A. 2C:7-8(a) authorized the Attorney General to create guidelines and procedures to evaluate a registrant's risk of re-offense. See Attorney General Guidelines for Law Enforcement for the Implementation of Sex Offender Registration and Community Notification Laws (Guidelines) (rev'd Feb. 2007). The RRAS was developed for the State's

use to establish a registrant's tier classification and manner of notification. In re Registrant T.T., 188 N.J. 321, 328 (2006) (citing C.A., 146 N.J. at 110).

The Megan's Law "[t]ier designations reflect a registrant's risk of re-offense, as determined by a judge assessing various information, including thirteen factors referenced in the RRAS." In re Registrant C.J., 474 N.J. Super. at 106 (citing A.A., 461 N.J. Super. at 402). "Although it is not scientific evidence, the [RRAS] is a 'reliable and useful tool that the State can use to establish its prima facie case concerning a registrant's tier classification and manner of notification.'" M.L., 479 N.J. Super. at 443 (quoting C.A., 146 N.J. at 110).

"While a tier classification made on the basis of the [RRAS] should be afforded deference, it is not absolute; a Megan's Law judge must conduct an independent review of the merits of the case and not rely solely on the [RRAS] score." Ibid. (citing C.A., 146 N.J. at 108-09). The State ultimately bears the burden of proving "by clear and convincing evidence both the registrant's level of risk to the community and the scope of notification necessary to protect the community." Ibid. (citing In re Registrant R.F., 317 N.J. Super. 379, 383-84 (App. Div. 1998)). The evidence "must be 'so clear, direct and weighty and convincing as to enable . . . a judge . . . to come to a clear conviction, without

hesitancy, of the truth of the precise facts in issue.'" In re Registrant J.G., 169 N.J. 304, 331 (2001) (quoting R.F., 317 N.J. Super. at 384).

The RRAS contains four categories: seriousness of the offense; offense history; personal characteristics; and community support. State v. C.W., 449 N.J. Super. 231, 260 (App. Div. 2017) (citing In re Registrant V.L., 441 N.J. Super. 425, 429 (App. Div. 2015)). Within those categories is a non-exhaustive list of thirteen risk assessment criteria related to re-offense. C.A., 146 N.J. at 82.

"The first two categories, '[s]eriousness of [o]ffense' and '[o]ffense [h]istory,' are considered static categories because they relate to the registrant's prior criminal conduct." Id. at 103. The next two categories, "[c]haracteristics of '[o]ffender' and '[c]ommunity [s]upport' are considered to be dynamic categories, because they are evidenced by current conditions." Ibid. The "static factors" relate to past criminal conduct and weigh more heavily under the RRAS than the dynamic factors. In re Registrant J.M., 167 N.J. 490, 500 (2001).

The "[s]eriousness of [o]ffense" category takes into account: (1) degree of force; (2) degree of contact; and (3) age of the victim(s). C.A., 146 N.J. at 103. The "[o]ffense [h]istory" category covers: (4) victim selection; (5) number of offenses/victims; (6) duration of offensive behavior; (7) length of time since last

offense; and (8) any history of anti-social acts.  Ibid.  The "[c]haracteristics of [o]ffender" category accounts for the registrant's: (9) response to treatment and (10) substance abuse.  Id. at 103-04.  The final category, "[c]ommunity [s]upport" considers a registrant's: (11) therapeutic support; (12) residential support; and (13) employment/educational stability.  Id. at 104.

"Each factor is assigned a risk level of low (0), moderate (1), or high (3), and '[t]he total for all levels within a category provides a score that is then weighted based on the particular category.'"  A.A., 461 N.J. Super. at 402 (alteration in original) (emphasis omitted) (quoting C.A., 146 N.J. at 104). "An RRAS score [totaling] 0 to 36 is low risk; 37 to 73 moderate risk; and 74 or more, high risk."  T.T., 188 N.J. at 329 (citing Guidelines 4).

Atypical cases in which the RRAS score is rendered suspect due to unique facts require an adjustment of the level of community notification indicated; this situation is commonly referred to as falling outside the "heartland" of Megan's Law cases.  G.B., 147 N.J. at 82.  "[T]he State may, in limited circumstances, request notification more expansive than indicated by a registrant's confirmed [RRAS] score."  M.L., 479 N.J. Super. at 449.  Such a request may only be made "in the 'unusual case where relevant, material, and reliable facts exist for which the [RRAS] does not account, or does not adequately account . . . .  Those facts

A-2546-24

must be sufficiently unusual to establish that a particular registrant's case falls outside the 'heartland' of cases.'" Ibid. (omission in original) (quoting G.B., 147 N.J. at 82).

"In challenging a tier determination, a registrant may argue that (1) the RRAS score was erroneously calculated, (2) the case falls outside the 'heartland' of Megan's Law cases, or (3) the extent of community notification required is excessive due to 'unique' aspects of the registrant's case." In re Registrant J.G., 463 N.J. Super. 263, 275 (App. Div. 2020) (quoting T.T., 188 N.J. at 330).

Having considered the arguments on appeal against these principles, we are satisfied the trial court did not abuse its discretion as its decision that the State clearly and convincingly established the need to classify registrant as a Tier III classification was fully supported by the record, which included, as noted, the victim's statements, the forensic nurse's report, her 911 call, and the police reports. To the extent registrant maintains the court in its oral decision failed to make necessary factual findings, we first note that we review orders, not opinions, see Do-Wop Corp. v. City of Rahway, 168 N.J. 191, 199 (2001), and on this point conclude the April 8, 2025 order explicitly made the necessary and required clear and convincing findings. We also reject any contention that

the court gave undue weight to the RRAS scores. The court's findings as expressed in its order are fully supported by the record, as noted.

We also disagree with registrant's arguments to the extent he maintains the court did not consider his credibility-based arguments regarding the victim's alleged intoxicated state and her inconsistencies related to her travel, companions, and ride share use before she was taken to registrant's home. As to the critical facts that supported the force and contact scoring, the court correctly noted that the fifteen-year-old victim's statements were consistent across multiple settings. We are satisfied her account of being forced to engage in vaginal and oral penetration was supported by the record and sufficient to meet the clear and convincing evidence standard required for Megan's Law tiering and accordingly find no support to conclude the court misapplied its discretion or to otherwise disturb its findings.

The court also explained that a Tier III classification and notification were appropriate in light of the registrant's history and the facts of the most recent offense, again relying on the documentary evidence in the record including the consistent statements of the victim, as reflected in the police reports, forensic nurse's report, and 911 call. Clearly the court rejected registrant's arguments that any inconsistencies in the victim's pre-assault travels were overcome by her

18

other consistent statements even in the absence of physical or forensic corroboration. The court also, as permitted by In re Registrant C.J., considered the facts of the 2021 offense, even those that did not result in a conviction. Further, as the court found, and as defendant admitted during his plea colloquy, he touched the victim's breast, which, given the context and the victim's age, was a non-consensual act and indicative of the risk posed by him.

In sum, the court conducted an independent review of the record and affirmed the State's Tier III high risk of re-offense. Under the totality of the circumstances, the court ultimately found that the State clearly and convincingly met its burden of proof. We have no cause to disturb that result.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Hanley

Clerk of the Appellate Division

19